UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| United States of America | : | |
| | : | |
| v. | : | No. 3:18-cr-242 (VLB) |
| | : | |
| Jodi Zils Gagne | : | |
|     Defendant. | : | April 2, 2020 |
| | : | |
| | : | |
| | : | |
| | : | |

### MEMORANDUM OF DECISION DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE [DKT. 68]

Before the Court is Defendant Jodi Zils Gagne's motion to reduce her sentence pursuant to 18 U.S.C. § 3582 (c)(1)(A)(i). [Dkt. 68]. Defendant first moved for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) based on delays in treatment of her multiple sclerosis. [Dkt. 68 (Def. Mot. for Reduction of Sent.)]. The Government opposed Defendant's motion. [Dkt. 69 (Gov. Mem. in Opp'n. Def. Mot. to Reduce Sent.)]. Thereafter, Defendant filed three supplemental motions arguing for compassionate release because of her risk of complications from the SARS-CoV-2 virus ("COVID-19") should she become infected. [Dkt. 71, 73, 74 (Def. Suppl. Mots.)]. The Government also opposed the Defendant's supplemental motion based on COVID-19. [Dkt. 72 (Gov. Mem. in Opp'n. Def. Suppl. Mem.)]. For reasons discussed herein, Defendant's motion is DENIED.

### Background

On October 10, 2018, Defendant waived her right to indictment and pled guilty to one count of mail fraud in violation of 18 U.S.C. § 1341. Defendant, a former

1

attorney, used her position as a court-appointed conservator to misappropriate monies that were intended for conserved persons' medical care, housing, bills, personal expenses, and legitimate conservator fees. [Dkt. 22 (PSR) ¶¶ 6-7].[1] Instead, the monies were used by Defendant for her own bills and enrichment. [*Ibid.*]. Defendant defrauded six victims of a total of $169,402.74. [*Id.* ¶ 17]. False statements were submitted to the Bristol Probate Court in furtherance of the scheme. [*Id.* at ¶¶ 6, 8, 22.].

Defendant was diagnosed with multiple sclerosis in 2010. [*Id.* at ¶ 50.]. Defendant was treating her condition with an injectable medication three times per day. [*Ibid.*]. According to the Defendant, a spinal lesion caused numbness in her feet up to her hips. [*Ibid.*]. At the time, she described her condition as well controlled, but that remission or relapse was possible. [*Ibid.*]. This information was considered and addressed by the Court at sentencing. The Court declined to grant the Defendant's requested downward departure on account of her medical conditions because her "medical conditions are not ones that cannot be addressed by the Bureau of Prisons." [Dkt. 67 (Sent. Tr.) at 63:15-63:20].

On April 23, 2019, the Court sentenced Defendant to 46 months' incarceration. [Dkt. 48 (Crim. J)]. The Court extended Defendant's self-surrender date until July 22, 2019. [Dkt. 55]. A review of the Bureau of Prison's ("BoP") Inmate Locator shows that she was designated to Federal Correctional Institution

---

[1] At sentencing, the Court confirmed that Defendant read the presentence report ("PSR"), including all supplements and addenda. Defendant did not have any objections to the facts as presented in the PSR and the Court adopted the PSR as its finding of fact. [Dkt. 67 (Sent. Tr.) at 6:03-6:13].

Danbury, a low security facility. *See* Fed. Bureau of Prisons, Inmate Locator Service, BoP Registration no. 26024-014, available at https://www.bop.gov/inmateloc/. *See Vera v. United States*, No. 3:11-CV-00864-VAB, 2017 WL 3081666, at *3, n. 2 (D. Conn. July 19, 2017) (taking judicial notice of the inmate locator search). Her estimated release date is October 26, 2022. *Ibid*.

### Defendant's First Motion to Reduce Sentence

In support of her motion for a reduction of sentence, Defendant argues that she recently had a relapse of tingling in her right hand. [Dkt. 68 (Def. Mem. in Supp. Mot for Reduction of Sent.) at 1]. According to the Defendant, she had to wait four months until she could be seen by a neurologist. [*Ibid*.]. She states that the BoP neurologist ordered MRI imaging, but it has not been conducted yet. [*Ibid*.]. Defendant is "concerned that the untimely delays in her medical treatment may cause her permanent damage or a loss in mobility." [*Ibid*.]. Additionally, Defendant avers that she does not have access to the diet and vitamins necessary to prevent relapse. [*Id*. at 1-2]. Defendant states that she was told that the delay in her initial care of approximately four months was due to her having "slipped through the cracks". [*Id*. at 2].

Four months after she began her sentence [Dkt. 54], Defendant requested compassionate release from the BoP, but has not received a response and more than thirty days has elapsed. [*Ibid*.].

### Legal Standard

The First Step Act of 2018 amended the procedural requirements for bringing a motion to reduce sentence to provide compassionate release. 18 U.S.C. § 3582(c)(1)(A). Because of this amendment, a defendant may move for

compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Previously, only the BoP could move for compassionate release and such motions were rarely filed. *See United States v. Rivernider*, No. 3:10-CR-222(RNC), 2020 WL 597393, at *2 (D. Conn. Feb. 7, 2020). The amendment expanded access to the courts but did not alter the substantive standard. *See Ibid.*; *see also United States v. Ebbers*, No. S402CR11443VEC, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020).

To consider a sentence reduction for compassionate release, Defendant must show that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). By statute, such reduction must be consistent with applicable policy statements issued by the U.S. Sentencing Commission. § 3582(c)(1)(A). Then, before compassionate release can be granted, the Court must consider the 18 U.S.C. § 3553 sentencing factors to the extent relevant. *Ibid.*

At Congress's direction, the U.S. Sentencing Commission promulgated guidance on the circumstances constituting "extraordinary and compelling" reasons. *See* 28 U.S.C. § 944(t). As other courts have recognized, the U.S. Sentencing Commission guidance has not yet been updated to reflect the liberalization of the procedural requirements. *Ebbers*, 2020 WL 91399, at *4. The Application Notes to U.S.S.G. § 1B1.13 explain that a defendant's medical condition may constitute "extraordinary and compelling" circumstances when:

(A) Medical Condition of the Defendant.--
    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.>
[or]
    (ii) The defendant is--
        (I) suffering from a serious physical or medical condition,
        (II) suffering from a serious functional or cognitive impairment, or
        (III) experiencing deteriorating physical or mental health because of the aging process,
that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**U.S.S.G. 1B1.13, Commentary Application Note 1(A)**

Commentary Application Note 1(D) contains a residual clause to provide relief for other "extraordinary and compelling reasons" as determined by the Director of the Bureau of Prisons.

The defendant bears the burden of showing that she is entitled to a sentence reduction. *Ebbers*, 2020 WL 91399, at *4.

## Analysis

The Defendant satisfied the procedural prerequisites to move for a sentence reduction under § 3582(c)(1)(A) based on her multiple sclerosis, but the motion fails on the merits because Defendant's medical condition is not "extraordinary and compelling."

The Court recognizes that "extraordinary and compelling" circumstances may exist outside of those circumstances delineated by the U.S. Sentencing Commission, given the advisory nature of the guidelines, *United States v. Booker*,

543 U.S. 220 (2005), and their conflict with the statutory language of the First Step Act amendments. *See United States v. Anton Jepsen*, 3:19-cr-73, Dkt. 41 at 7-8 (D.Conn. Apr. 1)(Bryant, J.), *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019); *United States v. Cantu,* No. 1:05-CR-458-1, 2019 WL 2498923, at *3-5 (S.D. Tex. June 17, 2019). The guidelines are nevertheless helpful in defining the vague standard because the First Step Act did not amend the substantive standard. *Ebbers,* N2020 WL 91399, at *4.

The Middle District of North Carolina considered treatment delays as "extraordinary and compelling circumstances" in *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *9 (M.D.N.C. June 28, 2019). In *Beck*, the defendant's § 3582(c)(1)(A) motion corresponded with a civil action over the BoP's 'abysmal' treatment of her invasive breast cancer, which itself resulted in a temporary injunction to compel the BoP to schedule appointments. *Id* at 7. The nearly two years of delay demonstrated 'indifference' to Ms. Beck's cancer treatment which "likely reached the level of a constitutional violation, creating a significant risk that her cancer will spread, if it has not already, and compromising her chance of survival." *Id.* at 9.

Here, considering the U.S. Sentencing Commission guidance, Defendant is neither terminally ill nor has she shown that her multiple sclerosis "substantially diminishes [her] ability to provide self-care within the environment of a correctional facility." U.S.S.G. 1B1.13, Application Note 1(A). Rather, Plaintiff speculates about the potentially adverse effect of possible future delays in accessing treatment and diagnostic imaging. Moreover, the Defendant does not submit any medical

6

evidence to suggest that her condition is substantially different than at the time of sentencing. Third, the BoP's purported statement that Defendant "slipped through the cracks" early in her incarceration tends to show that the BoP recognized a possible administrative error in her medical treatment plan and will take steps to address it.

The type of egregious delay in *Beck* is not present here. While the defendant's medical condition may present challenges in adjusting to incarceration, her condition is neither extraordinary nor compelling. A Bureau of Justice Statistics report found that 40% of jail and prison inmates have a current chronic medical condition. Laura M. Maruschak, Marcus Berzofsky, & Jennifer Unangst, U.S. Dep't of Just., Bureau of Just. Statistics., *Medical problems of state and federal prisoners and jail inmates: 2011-2012* at 1-22, 2 (Feb. 2015) available at https://www.bjs.gov/index.cfm?ty=pbdetail&iid=5219.

The Defendant also states that she does not have access to vitamins. [Dkt. 68 (Def. Mem. in Supp. Mot for Reduction of Sent.) at 1-2]. However, Defendant does not indicate whether she has addressed her special nutritional needs with custodial and medical staff and that they refused her medically necessary supplements or their functional equivalent. Defendant does not state whether she pursued any administrative grievances related to her medical care.

Accordingly, the Court denies Defendant's motion for a reduction of sentence because she has failed to show the existence of "extraordinary and

compelling" reasons as it relates to her multiple sclerosis and the BoP's treatment of that condition.

### COVID-19

On March 24, 2020, Defendant filed supplemental authority addressing the recent COVID-19 public health crisis. [Dkts. 71, 73, 74]. The two cases cited by Defendant in [Dkt. 71] are distinguishable. Both *United States v. Fellela*, No. 3:19-CR-79 (JAM), 2020 WL 1457877 (D. Conn. Mar. 20, 2020) and *United States of Am., v. Dante Stephens*, No. 15-CR-95 (AJN), 2020 WL 1295155 (S.D.N.Y. Mar. 19, 2020) address bail determinations, not post-conviction motions for a reduction of sentence.

On the contrary, this case is akin to *United States v. Paul Gileno*, No. 3:19-cr-161-(VAB)-1, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020), where Judge Bolden denied a defendant's motion for compassionate release based in part on risk of complications if the defendant contracted COVID-19. The Government opposed defendant's motion. *Id.* at 3. The defendant had not satisfied the administrative review requirement. *Ibid.* Substantively, the court concluded that the defendant had not shown that "the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno." *Ibid.*

The same rationale applies here. Like *Gileno*, the Defendant has not requested relief from the warden of her facility, nor has Defendant shown that the BoP cannot adequately manage the pandemic or treat her to a reasonable degree.

8

As a threshold matter, Defendant has not satisfied the requirement under 18 U.S.C. § 3582(c)(1)(A) to first request that the BoP file a motion on her behalf and then show that thirty days have passed without any BoP action. *See Gileno*, 2020 WL 1307108, at *4.

The Court cannot conclude that the Defendant is excused from the requirements of BoP's administrative procedure for requesting compassionate release based on the COVID-19 pandemic generally. Rather, as the Defendant notes [Dkt. 73, Ex. 2]; [Dkt. 74 at 6], U.S. Attorney General William P. Barr issued a new policy to the BoP on March 26, 2020, encouraging greater use of home confinement where appropriate. Mem. for Director of Bureau of Prisons: Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic, Office of Attorney General, (March 26, 2020). Instead of demonstrating futility, the Attorney General directed the BoP to analyze inmate's health and other risk factors in considering eligibility for home confinement.

Defendant does not present the "unique circumstances" warranting excusal of the exhaustion requirement considered by the Southern District of New York in *United States v. Perez*, 17-cr-513-3, at 2 (S.D.N.Y. Apr. 1, 2020) [Dkt. 74, Ex. 4]. In *Perez*, the defendant had less than three weeks remaining on his sentence, thus, "pursuing the administrative process would be a futile endeavor; he is unlikely to receive a final decision from the BOP, and certainly will not see 30 days lapse before his release date." *Id.* at 5.

Even if the Court were to conclude that exhaustion of administrative remedies was excused, the Defendant's motion fails on the merits. Defendant has not presented information to show that her specific medical conditions, medications, and conditions of confinement at FCI Danbury are inclined to uniquely and adversely affect her to the degree sufficient to establish "extraordinary and compelling" reasons. Nor has the Defendant shown that the BoP's response to confirmed cases at FCI Danbury has been inadequate from a medical standpoint. Notably, the Defendant's motion states that prison officials have "lockdown" FCI Danbury for 14 days, which is a preventative measure. [Dkt. 74 at 2].

This Court's recent decision in *United States v. Anton Jepsen*, No. 3:19-cv-73 (VLB), Dkt. 41(D.Conn. Apr. 1, 2020) is also distinguishable on several fronts. First, Mr. Jepsen had less than eight weeks left to serve on a nine-month sentence of incarceration for a Grade C violation of supervised release. *Id.* at 11. By contrast, Defendant has over two and a half years left to serve on her sentence.

Second, Mr. Jepsen satisfied the procedural requirements of the First Step Act after his request for relief was denied, both by the warden and by the BoP itself. *Id.* at 5-6.

Third, Mr. Jepsen produced medical evidence showing that he had multiple chronic conditions, some of which were poorly controlled, and specifically placed him at a heightened risk for severe complications in the custodial environment at the Donald W. Wyatt Detention Facility. *Id.* at 7. Difficulty stabilizing Mr. Jepsen's

health was previously noted in the record, at one point, necessitating a continuance. *Id.* at 3. Moreover, at Mr. Jepsen's February 2020 sentencing, the Court specifically addressed the need of a period of incarceration to provide him necessary medical stabilization, which could no longer be effectively achieved with the COVID-19 pandemic. *Id.* at 11; see also § 3553(a)(2)(D).

Accordingly, even if Defendant had exhausted administrative review at the BoP, the Defendant has not shown "extraordinary and compelling" reasons to reduce her sentence.

### 18 U.S.C. § 3553(a) factors

Because Defendant has not demonstrated "extraordinary and compelling" reasons for a reduction of sentence, the Court will only briefly address the § 3553(a) sentencing factors.

The Defendant faced a statutory maximum sentence of 20 years' imprisonment (18 U.S.C. § 1341) and an advisory guideline range of 41-51 months. [Dkt. 67 (Sent. Tr.) at 60:14-60:21]. The guideline sentence imposed reflects the serious nature of the Defendant's offense and the resultant human harm, which was significant and predatory, given her position of trust as a court-appointed conservator. At sentencing, the Court rejected the Defendant's request for home confinement because it would not deter the Defendant or other fiduciaries from fraud and would be too lenient and disproportionate to the harm she caused. [Dkt. 67 (Sent. Tr.) at 63:06-64:05]. As was the case at sentencing, the Defendant's

medical conditions are not among those that cannot be addressed by the BoP. *Id*. at 63:18-63:20.

The Court concludes that these factors remain equally applicable now. The Defendant has been incarcerated for just over eight months, or less than twenty percent of her sentence. A sentence of home confinement would not reflect the seriousness of the offense or foster respect for the law.

## Conclusion

For these reasons, the Court DENIES Defendant's motions for a reduction in sentence.

IT IS SO ORDERED

_____/s/_____

Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: April 2, 2020